DEMPSEY v. PORTIS MERCANTILE COMPANY.

4-5093

Opinion delivered September 26, 1938.

752

*C. T. Carpenter,* for appellants.

*John S. Mosby* and *Maddox & Greer,* for appellees.

GRIFFIN SMITH, C. J. Ernest Alton Dempsey and Annie Dempsey, on behalf of themselves, and Ernest Alton Dempsey as brother and next friend of S. L. Dempsey and James Dempsey, minors, brought this suit in Poinsett circuit court, seeking to recover possession of certain real property. They also asked damages at $300 per year for wrongful detention. In an amended complaint, filed after the cause had been transferred to chancery, $1,795 was asked to compensate waste.

January 4, 1929, S. W. Dempsey, father of appellants, stood charged with $462.68 on the books of Portis Mercantile Company. March 1, 1929, Dempsey and his wife executed to Glen Thompson as trustee for Portis Mercantile Company a deed of trust to the land in question, title to which was in Mrs. Dempsey. The deed also covered twenty head of live stock, farming tools, implements, etc.

The mortgagors gave the mercantile company their note, dated March 1, 1929, and due October 15, 1929. The trust deed also secured additional indebtedness that might be incurred . . . "for goods, wares, merchandise, supplies and money, to be advanced from time to time . . . for the purpose of making, gathering, and marketing the . . . crops, and for other purposes up to the maturity of the note, which said advances shall be evidenced by book account, and shall bear interest from their several dates until paid at the rate of ten per cent. per annum."

At the time the note and deed of trust were given, the account of $462.68 had been increased to $1,620.61. April 18, Dempsey was credited with $5,000, and to this

extent, for bookkeeping purposes, the note was treated as cash.

Mrs. Dempsey died August 23, 1929. At that time the total of all items charged under authority of the deed of trust was $6,786.47, but by October 15 this sum had been increased to $8,767.90, with credits amounting to $3,724.56. The debit differential against the Dempseys was $5,043.34.

March 1, 1930, S. W. Dempsey executed his note in favor of Portis Mercantile Company for $8,000, and seems to have impliedly acknowledged an indebtedness of $6,435.88; but he denies this. Total credits as of April 30, 1930, were $9,220.53. As security for $8,000, a new deed of trust was given on the same land. Appellant E. A. Dempsey alleges in his amended complaint that early in 1930 there was a settlement with the mercantile company; that the note and deed of trust given in 1929 were surrendered, and that they were marked paid.

April 4, 1932, Dempsey conveyed the real estate to Portis Mercantile Company. The grantee then conveyed to D. F. Portis, Jr., and he, in turn, mortgaged the property to Sledge & Norfleet. D. F. Porter, Jr., and Sledge & Norfleet, appear in the record as interveners.

D. F. Portis, Jr., testified: "The trade I made with Mr. Dempsey was that he was to deed to Portis Mercantile Company the land in controversy in this suit for the full satisfaction of his debt. . . . The personal property was all turned in at the time the deed was made . . . as a part of the consideration . . . of the debt owed by S. W. Dempsey, . . . and I, in turn, agreed to sell to Mr. Dempsey the personal property at a fair price, which was agreed upon. . . . He gave me a mortgage and note on the personal property. . . . He finished paying for it this year."

Dempsey testified that the $8,000 note was given in connection with a new contract, by which he was to clear and purchase certain lands; that it was given "to cover clearing and farming that land and other land I had rented, and my own place. . . . The same mules [and other personal property] were listed under the 1929

754

and 1930 mortgages. . . . In 1931 Mr. Portis took all my mules except two, and my farming tools, except one middle buster and one turning plow. . . . They were not taken at an agreed price—he just sent a man down there. . . . There was no agreement [as to how the credits were to be applied]. He just took the mules, but not until after the $8,000 mortgage was given.''

It will be observed that the deed of trust not only provides that the note shall draw interest at ten per cent. per annum, but that . . . "said *advances* . . . shall bear interest from their several dates until paid at the rate of ten per cent. per annum." October 22, 1929, a charge appears: "Note and interest, $5,433.28." Obviously $433.28 is the interest charge.

Since the purpose of the deed of trust was to secure the note, and since proceeds of the note were to stand as a credit on the books of the mercantile company to be drawn against by Dempsey, it would be improper to charge interest on both the note and the items comprising the account. It does not appear from the statement that this was done, but if $433.28 represents interest on the note from March 1 to the date the entry was made (October 22), it is incorrect. The proper amount would be $322.20; or, computed to October 15, it would be $312.45. But on January 1 Dempsey owed a balance of $462.68, with increases to $1,620.61 as of March 1. Appellants do not complain specifically of the method used in calculating and charging interest, but inasmuch as the cause must be remanded, attention is called to the figures.

It is our view that the land mortgaged by Mrs. Dempsey is not chargeable with advances made subsequent to October 15, 1929, except as such advances were required . . . "for the purpose of making, gathering, and marketing the crops . . ." It is true that the expression, "and for other purposes" appears in the mortgage, but this language must be read in connection with the general plan of supplying the means for making and disposing of the crops.

It becomes necessary to determine what part of the money advanced after October 15 was required to "make, gather, and market the crops."

Although the various debits as they appear on the books of the mercantile company are brought into the record, testimony is not sufficient for this court to segregate these items. A great deal of the cotton was not sold until 1930. Charges made subsequent to October 15, 1929, undoubtedly represented the cost of picking cotton, and we cannot, with justice to either side, draw a balance from the facts as presented and give judgment here.

We are also of the opinion that the personal property pledged by Dempsey in the 1930 mortgage (having been previously pledged under the 1929 deed of trust) should be applied in satisfaction of the joint obligation of Mr. and Mrs. Dempsey before recourse is had to the separate real property of Mrs. Dempsey's estate. Of course the estate accruing under § 4422 of Pope's Digest, being an interest of the husband, would not be protected.

The decree and judgment are reversed, and the cause is remanded with directions: (1) That all property, both real and personal, pledged by the deed of trust, be charged with advances made to October 15, 1929, and with such further sums as were required to complete the crops, and gather and market them. (2) That the aggregate of all credits accruing from the 1929 farming operations as contemplated by the deed of trust, including sales from such sources made subsequent to 1929, be ascertained and allowed. (3) That if any indebtedness then remains, the value of the pledged personal property be determined, and all, or such part thereof as may be necessary to settle the indebtedness, be credited. (4) That if such credits are not sufficient to discharge the mortgage, then the real property be proceeded against. (5) If it be shown that the credits herein directed to be allowed are sufficient to have discharged the 1929 mortgage without reference to the land, then appellants are to be reimbursed for the fair rental value of such land, and compensated for waste, if any.